**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-353** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **HELENE MITCHELL,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Defendant Helene Mitchell ("Mitchell") pled guilty in December of 2006 to possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e). Because Mitchell had three or more qualifying prior convictions under the Armed Career Criminal Act ("ACCA" or "the Act"), she received a mandatory minimum sentence of fifteen years' imprisonment. <u>See</u> 18 U.S.C. § 924(e). Mitchell presently moves the court for *vacatur* of her fifteen-year sentence in light of the United States Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), which invalidated the ACCA's residual clause as unconstitutionally vague. <u>Id.</u> at 2557. For the reasons that follow, the court will grant Mitchell's motion (Doc. 83) and schedule resentencing forthwith.

I.    **Factual Background & Procedural History**

On October 18, 2006, a federal grand jury sitting in Harrisburg, Pennsylvania,
returned a two-count indictment against Mitchell and a codefendant, Robert Allen
Boswell ("Boswell").  (Doc. 1).  The indictment charged Mitchell in Count II with
possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g) and
924(e), to wit: a New England Firearms shotgun, a Stevens Brand shotgun, and two
Marlin rifles.  (Id.)  Count I charged Boswell with the same offense.  (Id.)

Mitchell executed a written plea agreement on December 14, 2006.  (Doc. 29).
During a guilty plea proceeding on December 20, 2006, the court advised Mitchell
that her guilty plea would carry, *inter alia*, a mandatory minimum term of fifteen
years' imprisonment pursuant to the ACCA.  Mitchell stated that she understood
her sentencing exposure and entered a plea of guilty to Count II.  (Doc. 38).

The United States Probation Office prepared a presentence report ("PSR")
which calculated Mitchell's offense level and criminal history category pursuant to
the United States Sentencing Guidelines.  The PSR initially reflected a total offense
level of 23.  However, Mitchell was subject to the ACCA and thus designated an
armed career criminal pursuant to Guidelines § 4B1.4(b)(3)(B).  Hence, the PSR
upwardly adjusted her offense level to 30.  With a criminal history category of V,
Mitchell's Guidelines range at sentencing was 180 to 188 months.  On May 3, 2007,
the court sentenced Mitchell to the bottom of her Guidelines range, corresponding
with the ACCA's mandatory minimum sentence of fifteen years' imprisonment.
(Doc. 60).  Mitchell did not appeal her conviction or sentence to the United States
Court of Appeals for the Third Circuit.

Mitchell filed the instant motion (Doc. 83) to vacate her sentence on June 16, 2016, through appointed counsel.  The motion is fully briefed and ripe for disposition.  On October 24, 2016, Mitchell moved the court for immediate release on bond pending resolution of her underlying § 2255 motion.  (Doc. 92).  Mitchell contends that, but for the ACCA's sentencing enhancement, she would have been subject to a maximum sentence of ten years' imprisonment.  (Id.)  Mitchell submits that, as of October 30, 2016, she has been in continuous custody for more than ten years.  (Id.)  Given the exigencies identified in Mitchell's bond request, the court expedited its review and consideration of Mitchell's underlying motion.

## II.   <u>Standard of Review</u>

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may afford relief under § 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a); <u>see</u> <u>also</u> R. GOVERNING § 2255 CASES 1(a).  The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

III.   __Discussion__

The ACCA compels a mandatory minimum sentence of fifteen years' imprisonment for defendants convicted under 18 U.S.C. § 922(g) who have acquired three prior, adult convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The Act defines the term "violent felony" to include any offense punishable by imprisonment for more than one year which falls within one of three categories: (1) crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) crimes of burglary, arson, or extortion, or which involve use of explosives; and (3) crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(i)-(ii). Courts refer to the first clause as the "force clause," the second as the "enumerated offenses clause," and the third as the "residual clause."

The Supreme Court in Johnson invalidated only the residual clause of the ACCA as unconstitutionally vague. Johnson, 135 S. Ct. at 2557. Consequently, a defendant may still qualify for an enhanced sentence under the ACCA if they have three or more prior, adult convictions which qualify under the force clause or the enumerated offenses clause. Id. at 2563. Johnson is retroactively applicable to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016). Whether Mitchell's prior offenses fall within either of the ACCA's vestigial clauses is the central dispute *sub judice*.

Mitchell adjures that, in the wake of Johnson, her fifteen-year sentence violates the Constitution and laws of the United States and is in excess of the

otherwise-applicable maximum sentence of ten years.  (See Doc. 83 at 4).  Mitchell concedes that her prior conviction for unlawful distribution of crack cocaine is a "serious drug offense" as defined in 18 U.S.C. § 924(e)(2)(A), constituting the first of three qualifying strikes against her under the ACCA.  (Id. at 2 n.2).  She maintains, however, that her three prior convictions for arson under Pennsylvania law are beyond the reach of both the enumerated offenses clause and the force clause.  (Id. at 5-9).  It is on this basis that Mitchell challenges her enhanced sentence under the Act.

The government renders a threefold response, asserting *first*, that Mitchell's enumerated offenses claim was cognizable at her 2007 sentencing hearing and is thus untimely; *second*, that Mitchell procedurally defaulted any challenge to her ACCA designation; and *third*, that Mitchell's Pennsylvania arson convictions fall within the enumerated offenses clause.  (See generally Doc. 89).

## A.    Statute of Limitations

The government asserts as a threshold issue that Mitchell's enumerated offenses challenge is barred by the one-year statute of limitations applicable to § 2255 motions.  (Doc. 89 at 6-7); see 28 U.S.C. § 2255(f).  The government posits that Mitchell could have challenged her career criminal status under the enumerated offenses clause based on pre-Johnson case law and, consequently, her post-Johnson petition raising those arguments is untimely.  (See id.)  Government counsel acknowledges that the sentencing record contains no indication of whether Mitchell's prior convictions qualified under the residual clause or the enumerated

offenses clause. (See id. at 6). The court cannot be certain now—a decade later—which clause applied.

Post-Johnson jurisprudence flatly rejects application of a time bar. Courts resolving this question observe that the now-defunct residual clause would have swept up any conviction successfully challenged under the enumerated offenses clause.[1] It is sufficient for purposes of § 2255 review to show that the court *might* have applied the residual clause when it imposed the enhanced sentence. See Ladwig, 2016 WL 3619640, at *3. The court adopts the *ratio decidendi* of this emerging consensus. As set forth below, two of Mitchell's predicate offenses no longer qualify as violent felonies under the ACCA. Mitchell filed her petition within a year of Welch, in which the Supreme Court held that Johnson is retroactively applicable. Therefore, Mitchell's petition is timely. See 28 U.S.C. § 2255(f)(3).

### B.     Procedural Default

The government contends that Mitchell's claim is procedurally defaulted. (See Doc. 89 at 22). Specifically, the government asseverates that "[t]he status of arson, as an enumerated offense, was available for review at the time of [Mitchell's] plea." (Id.) Mitchell responds that any effort to challenge her ACCA designation at

---

[1] See, e.g., Fugitt v. United States, No. C16-5423, 2016 WL 5373121, at *2-3 (W.D. Wash. Sept. 26, 2016); Broadbent v. United States, No. 2:16-CV-569, 2016 WL 5922302, at *2-3 (D. Utah. Sept. 9, 2016); United States v. Ladwig, No. 2:03-CR-232, 2016 WL 3619640, at *3 (E.D. Wash. June 28, 2016); United States v. Gomez, No. 2:04-CR-2126, 2016 WL 1254014, at *3-4 (E.D. Wash. Mar. 10, 2016); see also In re Jackson, 826 F.3d 1343, 1345 (11th Cir. 2016); United States v. Baker, No. 6:06-CR-10129, 2016 WL 4593481, at *2-3 (D. Kan. Sept. 2, 2016); United States v. Harris, No. 1:CR-06-268, 2016 WL 4539183, at *9, __ F. Supp. 3d __ (M.D. Pa. Aug. 31, 2016). But see In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016) (denying leave to file a second or successive petition based on Johnson when sentencing record makes clear that judge relied on the force clause or the enumerated offenses clause).

the time of her guilty plea or at sentencing "would have been futile" because Pennsylvania arson was a qualifying conviction under the residual clause. (Doc. 90 at 5-6).

When a defendant fails to raise a claim on direct review, she "procedurally defaults" that claim for purposes of collateral review. United States v. Bousley, 523 U.S. 614, 622 (1998). A defendant may surmount a default by showing cause, as well as resulting prejudice should the default be given preclusive effect. United States v. Doe, 810 F.3d 132, 153 (3d Cir. 2015). Cause has been found to exist when a subject "constitutional claim is so novel that its legal basis is not reasonably available to counsel" in earlier proceedings. Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). In Reed, the Supreme Court specified three circumstances that trigger a novelty exemption: (1) the Court overrules one of its precedents; (2) the Court overturns a "longstanding and widespread [and] near-unanimous body of lower court authority"; or (3) the Court rebukes a practice that its prior opinions "arguably" sanction. Reed, 468 U.S. at 17. Mitchell's circumstance falls squarely within the first of these situations.

Mitchell cites United States v. Gibbs, 656 F.3d 180 (3d Cir. 2011) and United States v. Blair, 734 F.3d 218 (3d Cir. 2013), each affirming the constitutionality of ACCA's residual clause, to support her contention that any vagueness challenge would have been an exercise in futility. (See Doc. 90 at 5-6). Mitchell's argument is considerably weakened by the fact that both Gibbs and Blair were decided *after* her sentence was imposed and are thus inapposite. In the weeks preceding Mitchell's sentencing, however, the Supreme Court decided James v. United States, 550 U.S.

7

192 (2007).  In <u>James</u>, the Court rejected a suggestion—raised not by the parties but in dissent by the late Justice Scalia—that the residual clause was unconstitutionally vague.  <u>See</u> <u>id.</u> at 210 n.6.  The Court's decision in <u>James</u> inspired a line of cases which consistently reaffirmed the validity of, and thus foreclosed challenges to, the residual clause.[2]  We conclude that <u>James</u> effectively emasculated any void-for-vagueness challenge which may have otherwise been available.[3]

The court finds that Mitchell has established prejudice.  Mitchell has been continuously incarcerated since October 30, 2006.  (Doc. 92 ¶ 15).  If she achieves *vacatur* of the sentence enhancement under the ACCA, Mitchell's statutory maximum sentence may be reduced to ten years.  <u>See</u> 18 U.S.C. § 924(a)(2); (<u>but</u> <u>see</u> Doc. 94 at 4-8).  It is therefore quite possible that Mitchell has already completed the statutory maximum sentence for her crime of conviction.  Under these circumstances, the court is compelled to find that Mitchell has established actual and substantial prejudice to cure her procedural default.

---

[2] <u>See</u> <u>Begay v. United States</u>, 553 U.S. 137 (2008); <u>Chambers v. United States</u>, 555 U.S. 122 (2009); <u>Sykes v. United States</u>, 131 S. Ct. 2267 (2011).  Prior to <u>Johnson</u>, few challenges to the ACCA achieved even a modicum of success.  Courts weighing other challenges to the statute—from its lack of a maximum prison term, to its nebulous delineation between separate offenses, to a suggestion that ACCA embodies an unconstitutional delegation of legislative power—consistently, and oft summarily, rebuffed such attacks.  <u>See</u>, <u>e.g.</u>, <u>United States v. Castner</u>, 19 F.3d 1434, 1434 (6th Cir. 1994) (collecting maximum term and legislative delegation cases); <u>United States v. Hayes</u>, 951 F.2d 707, 709 n.1 (6th Cir. 1991) (collecting separate offense cases).

[3] This holding aligns with a developing consensus which finds that <u>James</u> excuses a defendant from failing to raise a void-for-vagueness challenge on direct appeal.  <u>See</u>, <u>e.g.</u>, <u>United States v. Garcia</u>, No. 13-CR-601, 2016 WL 4364438, at *3 (N.D. Cal. Aug. 16, 2016); <u>Casper v. United States</u>, No. 08-CR-127, 2016 WL 3583814, at *4 (W.D.N.C. July 1, 2016); <u>Cummings v. United States</u>, No. 15-CV-1219, 2016 WL 799267, at *7 (E.D. Wis. Feb. 29, 2016).

C.     The Enumerated Offenses Clause

The ACCA identifies burglary, arson, extortion, and crimes involving explosives as enumerated predicate felonies.  See 18 U.S.C. § 924(e)(2)(B)(ii).  The Supreme Court has held that, in enumerating these crimes, Congress intended to refer only to the "generic" version of the offense—or "the offense as commonly understood."  Mathis v. United States, 136 S. Ct. 2243, 2247-48 (2016) (citing Taylor v. United States, 495 U.S. 575, 598 (1990)).  The parties vigorously dispute whether Mitchell's three prior convictions for arson under Pennsylvania law constitute arson in the generic sense contemplated by the ACCA.

Courts typically utilize a "categorical approach" to determine whether a prior conviction qualifies as a predicate felony.  Mathis, 136 S. Ct. at 2248.  Under the categorical approach, a court first identifies the elements of the generic enumerated offense.  See Taylor, 495 U.S. at 598.  The court then measures the elements of the crime of conviction against the elements of the generic offense.  Mathis, 136 S. Ct. at 2248; United States v. Abbott, 748 F.3d 154, 157 (3d Cir. 2014).  A prior conviction will qualify as a predicate offense under the categorical approach "only if the statute's elements are the same as, or narrower than, those of the generic offense."  Descamps v. United States, 133 S. Ct. 2276, 2281 (2013).  Any "mismatch of elements" will disqualify a conviction as an ACCA predicate.  Mathis, 136 S. Ct. at 2251.

When the statute of conviction identifies "multiple, alternative elements, rather than a single, indivisible set of elements," courts apply an alternative metric known as the "modified categorical approach."  Abbott, 748 F.3d at 157-58 (citing

9

Descamps, 133 S. Ct. at 2281-85) (internal quotation marks omitted).  This approach allows a court to identify the particular crime of conviction from among the various alternatives "so that the court can compare it to the generic offense."  Descamps, 133 S. Ct. at 2285.  Before applying either rubric, the court must first identify the elements of the generic offense of arson.

### 1.    *Elements of Generic Arson*

Neither the Supreme Court nor the Third Circuit Court of Appeals has embraced a generic definition of arson.  We must therefore "distill a 'generic' definition of the predicate offense" by looking to state criminal codes, federal statutes, learned treatises, and the Model Penal Code.  United States v. Marrero, 743 F.3d 389, 399 (3d Cir. 2014) (quoting United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011)).[4]

The parties propose conflicting generic definitions which reflect diametric perspectives of the predicate offense.  Mitchell defines arson as "causing a fire or explosion with the purpose of destroying a building of another or damaging any property to collect insurance."  (Doc. 83 at 7).  The government defines the crime more broadly as "the willful or malicious burning of real or personal property."  (Doc. 89 at 11).  The parties' competing interpretations task the court to examine the requisite scienter attending generic arson.

---

[4] The court recognizes that Marrero concerns the career offender Guideline and not the ACCA.  Nonetheless, the Third Circuit relies on cases interpreting the career offender Guideline and ACCA interchangeably when defining "violent felony."  United States v. Calabretta, 831 F.3d 128, 134 (3d Cir. 2016).

Mitchell contends that the Supreme Court endorsed her generic definition in Begay v. United States, 553 U.S. 137 (2008).  In Begay, the Court considered whether driving under the influence of alcohol is a predicate violent felony under the residual clause.  See id.  Distinguishing driving under the influence from the ACCA's enumerated offenses, the Court commented that burglary, arson, and extortion "typically" involve "purposeful, violent, and aggressive" conduct.  Id. at 144-45.  The Court supported this statement with an "*e.g.*" citation to the Model Penal Code, appending a parenthetical notation that the Code defines arson to include "causing a fire or explosion with 'the purpose of,' e.g., 'destroying a building . . . of another' or 'damaging any property . . . to collect insurance."  Id. at 145 (quoting ALI MODEL PENAL CODE § 220.1(1) (1985)).

Mitchell's reliance on Begay as the *ultimum verbum* on generic arson is misplaced.  The Court did not announce a generic definition of the offense.  It did not survey the fifty states' treatment of arson, or examine treatises and decisional law as is typical of a generic definition case.  Cf. Taylor, 495 U.S. 575.  It merely sampled passages from the Model Penal Code as *examples* of arson in supporting its principal conclusion—that driving under the influence is a horse of a different color than the ACCA's enumerated offenses.  The Court "thus left open the possibility that generic arson might have a broader sweep" than the examples it cited.[5]  United States v. Misleveck, 735 F.3d 983, 985 (7th Cir. 2013).  Indeed, subsequent to Begay, the Court observed that "the elements of generic arson are themselves so uncertain

---

[5] Interestingly, no state has adopted the Model Penal Code's definition of arson.

as to pose problems for a court having to decide whether they are present in a given state law." Torres v. Lynch, 136 S. Ct. 1619, 1633 (2016). Begay is valuable for its examination of ACCA scienter *ad abstractus*, but it does not answer the court's cardinal inquiry.

The government's suggested definition of generic arson—"willful or malicious burning of real or personal property"—accords with the consensus among courts of appeals to have reached this question. See Brown v. Caraway, 719 F.3d 583, 590 (7th Cir. 2013); United States v. Velez-Alderete, 569 F.3d 541, 545-46 (5th Cir. 2009); United States v. Whaley, 552 F.3d 904, 906-07 (8th Cir. 2009); United States v. Velasquez-Reyes, 427 F.3d 1227, 1230 (9th Cir. 2005); see also United States v. Knight, 606 F.3d 171, 173-74 (4th Cir. 2010); United States v. Hathaway, 949 F.2d 609, 610 (2d Cir. 1991). Courts generally consider the terms "knowing" and "intentional" to be interchangeable with "willful" in this context. See Velasquez-Reyes, 427 F.3d at 1230; see also Misleveck, 735 F.3d at 985.

The government's definition also aligns with a robust majority of state criminal codes. Forty-three states statutorily define the scienter element of arson as

conduct undertaken "maliciously," "willfully," "knowingly," or "intentionally."[6] The federal arson statute, 18 U.S.C. § 844(f)(1), makes it a crime to "maliciously damage[] or destroy[]" personal or real property by fire or explosives. Coalescing all of these resources and jurisprudence, the court concurs with the government's suggested definition and concludes that generic arson comprises the intentional, knowing, willful, or malicious burning of personal or real property.

But the court's agreement with the government extends no further. The government suggests that the scienter requirement for generic arson attaches only to the act of starting a fire—that one intentionally strikes a match, for example—but not to the attending risk of harm. (See Doc. 89 at 12-13). This intimation that one might commit the offense of generic arson without any purpose to cause injury or damage finds little support among the fifty states' criminal codes. A small minority define *lesser* degrees of arson as intentional starting of a fire with reckless disregard to the risks attending same. In Alabama, for example, one commits third degree

---

[6] See ALA. CODE §§ 13a-7-41 to -42; ALASKA STAT. §§ 11.46.400-.420; ARIZ. REV. STAT. ANN. §§ 13-1703 to -1704; CAL. PENAL CODE § 451; COLO. REV. STAT. §§ 18-4-102 to -105; DEL. CODE ANN. tit. 11, §§ 802-03; D.C. CODE §§ 22-302 to -303; FLA. STAT. § 806.01; GA. CODE ANN. §§ 16-7-60 to -62; HAWAI'I REV. STAT. §§ 708-8251 to -8254; IDAHO CODE §§ 18-802 to 18-804; 720 ILL. COMP. STAT. § 5/20-1; IND. CODE. § 35-43-1-1; KAN. STAT. ANN. § 21-5812; LA. STAT. ANN. § 14:52; MD. CODE ANN. CRIM. LAW §§ 6-102 to -103; MASS. GEN. LAWS ch. 266, § 1; MICH. COMP. LAWS §§ 750.72-.77; MINN. STAT. §§ 609.561-.5632; MISS. CODE ANN. §§ 97-17-1, -5, -7; MO. REV. STAT. §§ 569.040-.050; MONT. CODE. ANN. § 45-6-103; NEB. REV. STAT. §§ 28-502 to -504; NEV. REV. STAT. §§ 205.010-.025; N.H. REV. STAT. ANN. § 634:1; N.J. STAT. ANN. § 2C:17-1(b); N.M. STAT. ANN. § 30-17-5(A); N.Y. PENAL LAW §§ 150.20-.10, -.01; N.C. GEN. STAT. § 14-58 (adopting North Carolina's common law definition); OHIO REV. CODE ANN. § 2909.03; OKLA. STAT. tit. 21, §§ 1401-04; OR. REV. STAT. §§ 164.315, -.325; 11 R.I. GEN. LAWS §§ 11-4-2 to -5; S.C. CODE ANN. § 16-11-110; TENN. CODE ANN. § 39-14-301; UTAH CODE ANN. § 76-6-102; VT. STAT. ANN. tit. 13, §§ 502-05; VA. CODE ANN. § 18.2-77; WASH. REV. CODE §§ 9A.48.020-.030; W. VA. CODE §§ 61-3-1 to -3; WISC. STAT. § 943.02; WYO. STAT. ANN. §§ 6-3-101 to -104.

arson if he or she "recklessly damages a building by a fire." ALA. CODE § 13a-7-42. Same for Colorado, Connecticut, Delaware, New York, Kentucky, and Wyoming. See COLO. REV. STAT. § 18-4-105 (fourth degree); CONN. GEN. STAT. § 53a-113 (third degree); DEL. CODE ANN. tit. 11, § 801 (third degree); N.Y. PENAL LAW § 150.05 (fourth degree); see also KY. REV. STAT. ANN. § 513.040; WYO. STAT. ANN. §§ 6-3-103 to -104. Only four states treat reckless arson as generic arson without ascribing to it a lesser degree or grade. See HAW. REV. STAT. 708-8252; ME. STAT. tit. 17-a, § 802; N.J. STAT. ANN. § 2C:17-1(b); PA. CONS. STAT. ANN. § 3301(a), (c). This minority treatment is overwhelmed by the consensus of the majority of states, which require a purpose to cause damage.[7]

---

[7] See ALA. CODE §§ 13a-7-41 to -42 ("intentionally damages"); ALASKA STAT. §§ 11.46.400-.420 ("intentionally damages" or "knowingly damages"); ARIZ. REV. STAT. ANN. §§ 13-1703 to -1704 ("knowingly and unlawfully damaging"); ARK. CODE ANN. § 5-38-301 ("with the purpose of destroying or otherwise damaging"); CAL. PENAL CODE § 451 ("willfully and maliciously . . . causes to be burned"); COLO. REV. STAT. §§ 18-4-102 to -104 ("knowingly . . . causes to be burned [or] intentionally damages"); CONN. GEN. STAT. §§ 53a-111 to -112 ("with intent to destroy or damage"); DEL. CODE ANN. tit. 11, §§ 802-03 ("intentionally damages"); D.C. CODE §§ 22-302 to -03 ("maliciously injures or breaks or destroys"); GA. CODE ANN. §§ 16-7-60 to -62 ("knowingly damages"); IDAHO CODE §§ 18-802 to 18-804 ("willfully and unlawfully . . . damages"); 720 ILL. COMP. STAT. § 5/20-1 ("knowingly . . . damages"); IND. CODE § 35-43-1-1 ("knowingly or intentionally damages"); IOWA CODE § 712.1 ("with the intent to destroy or damage"); KAN. STAT. ANN. § 21-5812 ("knowingly . . . damaging"); KY. REV. STAT. ANN. §§ 513.020-.030 ("with the intent to destroy or damage"); LA. STAT. ANN. § 14:52 ("intentional damaging"); MICH. COMP. LAWS §§ 750.72-.77 ("willfully or maliciously burns, damages, or destroys"); MINN. STAT. §§ 609.561-.563 ("intentionally destroys or damages"); MISS. CODE ANN. §§ 97-17-1, -5, -7 ("willfully and maliciously . . . causes to be burned"); MO. REV. STAT. §§ 569.040-.050 ("knowingly damages"); MONT. CODE. ANN. § 45-6-103 ("knowingly or purposely . . . damages"); NEB. REV. STAT. §§ 28-502 to -503 ("intentionally damages"); N.M. STAT. ANN. § 30-17-5(A) ("with the purpose of destroying or damaging"); N.Y. PENAL LAW §§ 150.20-.10, -.01 ("intentionally damages"); N.D. CENT. CODE § 12.1-21-01 ("with intent to destroy"); OR. REV. STAT. §§ 164.315, -.325 ("intentionally damages"); 11 R.I. GEN. LAWS §§ 11-4-2 to -5 ("knowingly causes . . .

More problematically, the government's proposed definition directly conflicts with the touchstone of <u>Begay</u>: that the enumerated offenses ineluctably involve conduct which is "purposeful, violent, and aggressive." <u>Begay</u>, 128 S. Ct. at 144-45. The government's suggested definition belies its own concession that "the Supreme Court *certainly held* that the enumerated offenses involve" focused and intentional malfeasance. (Doc. 89 at 14 (quoting <u>Begay</u>, 128 S. Ct. at 145) (emphasis added)). Consistent with the majority of state criminal codes and the overarching guidance of <u>Begay</u>, the court concludes that a key element of generic arson is the intent to cause damage.

### 2. *Mitchell's Pennsylvania Arson Convictions*

The court turns to the essential question *sub judice*: whether Mitchell's Pennsylvania arson convictions align with the definition of arson in the generic sense. To qualify as predicate felonies, the elements of Mitchell's prior crimes of conviction must match the elements of generic arson. <u>Abbott</u>, 48 F.3d at 157. If elements of Mitchell's prior arson convictions "cover a greater swath of conduct than the elements of the relevant ACCA offense,"—that is, if the offense of conviction is broader than the generic definition of arson—her prior convictions cannot qualify as predicate felonies. <u>Mathis</u>, 136 S. Ct. at 2251.

Mitchell charges that Pennsylvania arson is broader than generic arson in two significant respects: *first*, she contends that Pennsylvania's statute turns arson

---

damage or destruction"); S.D. CODIFIED LAWS §§ 22-33-9.1 to -9.2 ("with the intent to destroy"); TENN. CODE ANN. § 39-14-301 ("knowingly damages"); TEX. PENAL CODE ANN. § 28.02 ("with intent to destroy or damage"); UTAH CODE ANN. § 76-6-102 ("intentionally damages"); WISC. STAT. § 943.02 ("intentionally . . . damages"); WYO. STAT. ANN. §§ 6-3-101 to -102 ("with intent to destroy or damage").

into an inchoate offense, contemplating aiding and abetting liability in addition to the generic, substantive crime; and *second*, she asserts that the generic offense requires intentional, knowing, willful, or malicious action, while Pennsylvania's statute sweeps more broadly to include "reckless" conduct. (Doc. 90 at 3-4). The court takes these arguments in turn.

Mitchell suggests that generic arson requires actual completion of the substantive offense. (See id.) It follows, according to Mitchell, that the inchoate offenses contemplated by Pennsylvania's arson statute render the state's definition of arson broader than the enumerated offense. (See id.) The Supreme Court has rejected this argument in connection with federal immigration statutes' definition of generic offenses, concluding that a generic crime also includes aiding and abetting liability. See Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 189-90 (2007). Each court to consider this question under ACCA has reached the same result. See United States v. Groce, 999 F.2d 1189, 1191-92 (7th Cir. 1993); Hathaway, 949 F.2d at 610-11; see also United States v. Mitchell, 23 F.3d 1, 2-3 (1st Cir. 1994). Mitchell offers no competing authority. Accordingly, the court rejects Mitchell's inchoate offense argument.

Mitchell contends that the arson statute undergirding her three prior convictions incorporates recklessness as a chargeable *mens rea* as contrasted with the intentional act *mens rea* required by arson in the generic sense. (See Doc. 83 at 8-9; Doc. 90 at 4-5). Pennsylvania' s arson statute has been amended in the decades since Mitchell's arson convictions, but its requisite elements remain largely the

same.  At the time of Mitchell's first conviction, Pennsylvania defined arson offenses

as follows:

§ 3301.  Arson and related offenses.

(a) Endangering persons.—A person commits a felony of the
first degree if he intentionally starts a fire or causes an
explosion, whether on his own property or on that of
another, and thereby recklessly places another person in
danger of death or bodily injury.  For purposes of this
subsection, "another person" shall include, but shall not
be limited to, firefighters, police officers or citizens who
render assistance at the scene of the fire or explosion.

(b) Endangering property.—A person commits a felony of the
second degree if he:

(1) starts a fire or causes an explosion with intent of
destroying a building or occupied structure of another;

(2) intentionally starts a fire or causes an explosion,
whether on his own property or on that of another,
and thereby recklessly places a building or occupied
structure of another in danger of damage or
destruction; or

(3) starts a fire or causes an explosion with intent of
destroying or damaging any property, whether his
own or of another, to collect insurance for such loss.

. . .

Act of April 29, 1982, No. 101, § 1, 1982 Pa. Laws 363, 363-64.

Shortly after Mitchell's first conviction, the Pennsylvania General Assembly

modified slightly the Commonwealth's arson statute.  The statute in effect at the

time of Mitchell's second and third offenses provided:

§ 3301.  Arson and related offenses.

(a) Arson endangering persons.—

17

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i)   he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

(ii) he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.

(2) A person who commits arson endangering persons is guilty of murder of the second degree if the fire or explosion causes the death of any person, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire, and is guilty of murder of the first degree if the fire or explosion causes the death of any person and was set for the purpose of causing the death of another person.

. . .

(c) Arson endangering property.—A person commits a felony of the second degree if he intentionally starts a fire or causes an explosion, whether on his own property or that of another, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, and if:

(1) he commits the act with intent of destroying or damaging a building or unoccupied structure of another;

(2) he thereby recklessly places an inhabited building or occupied structure of another in danger of damage or destruction; or

(3) he commits the act with intent of destroying or damaging any property, whether his own or of another, to collect insurance for such loss.

(d) Reckless burning or exploding.—A person commits a
felony of the third degree if he intentionally starts a fire or
causes an explosion, or if he aids, counsels, pays or agrees
to pay another to cause a fire or explosion, whether on his
own property or on that of another, and thereby
recklessly:

(1) places an uninhabited building or unoccupied
structure of another in danger of damage or
destruction; or

(2) places any personal property of another having a value
of $5,000 or more in danger of damage or destruction.

. . .

Act of December 7, 1982, No. 227, § 1, 1982 Pa. Laws 811, 811-12.

Each iteration of the Pennsylvania arson statute sweeps more broadly than the generic definition of arson.  Each contemplates fire-starting with purpose to harm as well as the lighting of a lawful fire with a reckless *mens rea*.  The former fits neatly within the category of generic arson; the latter embraces conduct beyond the purview of the generic offense.  The Seventh Circuit examined a similar state arson statute (Delaware), and concluded that the broad scope of criminal conduct encompasses the "defendant who lawfully lights a cigarette or sets a bonfire on his own property and is merely reckless as to whether the fire might spread and damage an adjoining building."  Brown, 719 F.3d at 590.  Clearly, this is not generic arson.

The modified categorical approach provides guidance when a statute criminalizes both generic and non-generic offense conduct.  Under this approach, the court "looks to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of."  Mathis, 136 S. Ct. at 2249.  Those

19

documents include, *inter alia*, the indictment, jury instructions, or plea agreement, and are generally referred to as <u>Shepard</u> documents, a reference taken from <u>Shepard v. United States</u>, 544 U.S. 13, 26 (2005) (describing records courts may consider under modified categorical approach).  The sole purpose of this limited document review is to identify elements of the crime of conviction, *not* to discover facts or evidence which might satisfy elements of the generic offense.  <u>Descamps</u>, 133 S. Ct. at 2288, 2293.

Pennsylvania's arson statute is an exemplar among divisible statutes.  It sets forth, in the disjunctive, a multitude of offenses with varying degrees of scienter.  The court may thus examine the record of Mitchell's prior arson convictions to ascertain the particular offenses to which Mitchell pled guilty.  The government has provided the court with <u>Shepard</u> documents for each conviction to assist in this endeavor.  (<u>See</u> Docs. 89-1 to 89-8).

In 1982, Mitchell was charged in two separate counts with arson endangering persons in violation of 18 Pa. Cons. Stat. § 3301(a) and arson endangering property in violation of 18 Pa. Cons. Stat. § 3301(b)(2).  (Doc. 89-1).  Court records reflect that the "counts merged" when Mitchell entered her guilty plea on February 22, 1982.  (Doc. 89-2).  The actual count of conviction is unclear from the state court record, (<u>see</u> <u>id.</u>), but this uncertainty is of no moment because the statutory language of both crimes requires only that a defendant "recklessly place[]" another person or property in danger.  Act of April 29, 1982, No. 101, § 1, 1982 Pa. Laws 363, 363-64.  It is beyond peradventure that recklessness is a lesser standard which does "not qualify as sufficiently 'purposeful'" for generic arson.  <u>See</u> <u>Brown v. Caraway</u>, 719

F.3d 583, 592 (7th Cir. 2013).[8]  Hence, Mitchell's first conviction does not qualify as a predicate offense under the ACCA.

In her second predicate offense, Mitchell was charged with violations of §§ 3301(a)(1)(i) and (a)(1)(ii).  (Doc. 89-3).  Mitchell pled guilty to both counts.  (Id.)  In 1985, subsection (a)(1)(i) required only reckless conduct and a conviction thereunder would not qualify as a predicate offense.  However, subsection (a)(1)(ii), to which Mitchell also pled guilty, required that the defendant "commit[ed] the act *with the purpose of destroying or damaging* an inhabited building or occupied structure of another."  Act of December 7, 1982, No. 227, § 1, 1982 Pa. Laws 811, 811-12 (emphasis added).  This offense plainly has as an element the "purpose to harm" that is germane to the common understanding of arson.  It is arson in the purest form, and the court finds that Mitchell's second arson conviction qualifies as a predicate offense under the ACCA.

In her final arson conviction, Mitchell entered a guilty plea to violations of §§ 3301(a)(1)(i) and 3301(c)(2).  (See Doc. 89-6).  These subsections require only reckless conduct causing damage to persons or property.  Act of December 7, 1982, No. 227, § 1, 1982 Pa. Laws 811, 811-12.  These offenses, like Mitchell's first, are not acts of arson in the generic sense.  Consequently, Mitchell's third conviction does not qualify as a predicate felony under the enumerated offenses clause.

---

[8] As noted *supra*, the Seventh Circuit in Brown measured Delaware's third degree arson statute against the "purposeful" element articulated by the Supreme Court in Begay.  The court held that Delaware's statute, requiring only reckless scienter with respect to the harm caused, does not qualify under the enumerated offenses clause because "generic arson contemplates purposeful, rather than reckless, conduct."  Id. at 590-91.  As of this writing, Brown appears to be the only circuit court authority on this issue.

Application of the modified categorical approach reveals that Mitchell's first and third arson convictions are not arson in its generic form.  Based upon the court's findings set forth above, Mitchell has only two predicate felonies under the ACCA: her conviction for distribution of crack cocaine, which Mitchell concedes is a "serious drug offense" as defined by 18 U.S.C. § 924(e)(2)(A), and her 1985 conviction for arson, which qualifies as an enumerated offense under 18 U.S.C. § 924(e)(2)(B)(ii).  Mitchell's enhanced sentence is no longer substantiated by the ACCA.[9]

## IV.   Conclusion

For all of the reasons set forth herein, the court concludes that Mitchell is entitled to resentencing pursuant to 28 U.S.C. § 2255 and Johnson v. United States, 135 S. Ct. 2551 (2015).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        November 10, 2016

---

[9] In a single sentence, the government argues that Mitchell's arson convictions alternatively qualify under the ACCA's force clause.  (Doc. 89 at 6).  The Third Circuit rejected an identical argument in the context of Pennsylvania's terroristic threats statute, which criminalizes communication of a threat to "commit any crime of violence," 18 PA. STAT. & CONS. STAT. ANN. § 2706.  See United States v. Brown, 765 F.3d 185, 192 (3d Cir. 2014).  The court observed that "Pennsylvania arson can exist 'regardless of whether a person is present,'" such that the offense cannot qualify as "crime of violence" involving "the use of physical force *against the person* of another" for purposes of the career offender Guideline.  Id. (emphasis added).  We conclude that Brown applies with equal force to bar Pennsylvania arson convictions from qualifying as predicate offenses under the ACCA's force clause.  See Calabretta, 831 F.3d at 134.